# In the United States Court of Federal Claims

No. 09-701C
Filed:  June 13, 2011

|  |  |
|---|---|
| TEXAS INSTRUMENTS INCORPORATED, f/k/a METALS AND CONTROLS CORP., M&C NUCLEAR, INC., | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) |

_____

ORDER

DENYING MOTION TO DISMISS

and

DIRECTING FILING OF AMENDED COMPLAINT

_____

Plaintiff, Texas Instruments, Inc., sues here under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (2006), and the Price-Anderson Act (Section 170 of the Atomic Energy Act of 1954, as amended, 42 U.S.C. §§ 2210 et seq.), to recover litigation expenses allegedly owed to it under the indemnification provisions of various contracts plaintiff performed for the United States Atomic Energy Commission (now the United States Department of Energy).  In particular, plaintiff seeks the reimbursement of $2,115,538.21 in costs plaintiff has expended in defending or in preparing to defend against three lawsuits following the discovery at the Shpack Landfill in Attleboro, Massachusetts, of radiological materials related to its contracts. The first two suits—filed against plaintiff by individuals seeking compensation for

injuries arising from exposure to the landfill (referred to here as "the Toxic Tort Actions")—were recently settled; the third suit, a proposed action against plaintiff by the United States Department of Justice, acting on behalf of the United States Army Corps of Engineers, to recover costs associated with the landfill's clean-up (referred to here as the "FUSRAP Action") has not yet been filed.[1]

The case is now before the court on defendant's motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted.  The parties have fully briefed the issues and the court heard oral argument on May 25, 2011.  For the reasons set forth below, defendant's motion to dismiss is denied and plaintiff is directed to amend its complaint.

I.

Beginning in the early 1950s and continuing thereafter for a span of approximately 30 years, Metals and Controls Corp. and its wholly owned subsidiary M & C Nuclear, Inc. (hereinafter referred to collectively as "M&C"), served as contractors for the Atomic Energy Commission, engaged in the development, processing, and fabrication of nuclear fuels from radioactive materials owned and supplied by the United States.  Approximately 100 such contracts were performed by M&C during this three-decade period.  Each of the contracts contained an indemnity provision protecting M&C against claims made in connection with M&C's nuclear work for the United States and requiring the United States to pay and/or reimburse M&C for all reasonable costs incurred in the investigation, defense, and settlement of claims relating to that work.  All of the work under these contracts was performed at M&C's former facility in Attleboro, Massachusetts.

In the late 1970s, radiological materials were discovered at the Shpack Landfill—a privately maintained, nine-acre site located on the boundary line between the towns of Attleboro and Norton, Massachusetts.  In response to this discovery, an investigation was initiated by the Nuclear Regulatory Commission ("NRC") to determine the composition and potential origins of the radiological materials. Following completion of this investigation, the NRC issued a report in 1979 finding that M&C was the probable source of the radiological materials found at the site,

---

[1]  The Formerly Utilized Sites Remedial Action Program ("FUSRAP") is a program that was created by the Atomic Energy Commission in 1974 to identify, investigate, and take appropriate cleanup action at sites contaminated with low concentrations of radiological material resulting from the nation's early atomic weapons and energy program.  Today, this program is administered by the Corps of Engineers.

specifically uranium, and that the materials were identifiable with specific contracts that had been performed by M&C for the Atomic Energy Commission.

In light of that finding, the Department of Energy ("DOE"), the agency then responsible for administering FUSRAP, undertook a detailed investigation to determine whether the site was contaminated with radioactive material resulting from activities related to either the Manhattan Engineer District or the Atomic Energy Commission under the Atomic Energy Act.  In a decision issued on December 17, 1983, DOE concluded that "[o]ur analyses to date suggest there can be little doubt . . . that the materials were derived from Manhattan Engineer District/Atomic Energy Commission activities."  DOE accordingly designated the Shpack Landfill for action under FUSRAP.

In September 2005, the Corps of Engineers, by then the agency responsible for FUSRAP oversight, initiated a response action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA"), to clean up the radiological materials found at the Shpack Landfill.  The Corps then submitted a request to the United States Department of Justice ("DOJ") to initiate an action against plaintiff to recover the Corps' present and future cleanup costs associated with that effort.  DOJ notified plaintiff of the proposed lawsuit in October 2007 and advised that its filing was "imminent."  Although this suit has not yet been filed, plaintiff has nevertheless incurred costs and fees in preparation for its expected defense.

In March 2008, two individuals filed separate lawsuits against plaintiff and other private entities in the Massachusetts Superior Court alleging injuries as a result of their exposure to radiological materials at the Shpack Landfill.  These suits—previously identified in this order as the Toxic Tort Actions—were subsequently removed to the United States District Court for the District of Massachusetts and were pending there on October 15, 2009, when plaintiff filed the instant complaint.  Since that time, however, both actions have been settled pursuant to agreements providing for plaintiff's payment of monetary compensation to each claimant.  Stipulations of dismissal acknowledging these settlements were filed in the district court on March 8, 2011.

In May 2008, plaintiff submitted a "Notice of Claim" to DOE pursuant to the Contract Disputes Act, requesting indemnification for its investigation and defense costs incurred as a result of the Toxic Tort Actions and the anticipated FUSRAP Action.  The claim was denied in a final decision entered by the contracting officer on October 17, 2008.

In October 2009, plaintiff filed suit in this court.  In Count I of its complaint, titled "Contractual Indemnity," plaintiff alleges that it is entitled under its contracts

to the indemnification of the costs it has incurred in both the Toxic Tort Actions and the anticipated FUSRAP Action and that the government's failure to reimburse these expenses constitutes a breach of contract for which damages are owed.

In Count II of the complaint, titled "Price-Anderson Act Indemnity," plaintiff alleges that its expenses associated with the Toxic Tort Actions and the anticipated FUSRAP Action represent costs incurred to address a "public liability" for a "nuclear incident" as those terms are defined in the Atomic Energy Act, as amended by the Price-Anderson Act, 42 U.S.C. § 2014.  Plaintiff thus maintains that the United States is required under that act to pay and/or reimburse plaintiff for the public liability costs it has incurred.

In Count III, titled "Reimbursement," plaintiff alleges that it is entitled under the terms of its contracts to reimbursement of the substantial expenses, including litigation, investigation, and defense costs, that it has incurred in connection with the presence of nuclear material at the Shpack Landfill that allegedly originated in connection with the performance of M&C's contracts with the United States.

Finally, in Count IV, titled "Implied Warranty of Specifications/Constructive Change/Equitable Adjustment," plaintiff claims entitlement to an equitable adjustment based on the contention that the expenses that it has incurred in connection with the presence of nuclear material at the Shpack Landfill resulted from its compliance with contract specifications dictated by the United States with respect "to the fabrication, accountability, and management of all nuclear material and products manufactured at M&C, including disposition of all nuclear materials." Count IV further asserts that plaintiff "has performed work and incurred costs beyond that required by the Government Contracts due to the United States' breach of implied warranty of specifications resulting in a constructive change to the Government Contracts."  Plaintiff's complaint asserts entitlement to damages and equitable adjustment in the amount of $2,115,538.21, together with prejudgment interest and attorney's fees "as a result of United States' breaches of contract and indemnity obligations."

II.

We begin our discussion with defendant's motion urging dismissal of Count I ("Contractual Indemnity") and Count II ("Price-Anderson Act Indemnity") for lack of jurisdiction.  Defendant's argument centers on the language of the indemnity provision that was included in one of the contracts that the 1979 NRC report

identified as a source of the radiological materials found at the Shpack Landfill.[2]  The language reads in relevant part as follows:  "The [government] will indemnify the Contractor . . . against (i) claims for public liability . . . ; and (ii) the reasonable costs of investigating and settling claims, and defending suits for damage for such public liability . . . ."  Defendant interprets this language as requiring that a claim for public liability be resolved—either through a final court judgment or an approved settlement—before the government can be held liable for the indemnification of a contractor's investigation and defense costs.  Defendant thus argues that plaintiff's claim for the costs it has incurred in advance of a yet-to-be filed lawsuit (i.e., the FUSRAP Action) is unripe and therefore, because plaintiff can assert no entitlement to money presently due, this court has no jurisdiction to hear its complaint.[3]

We reject this argument.  To state a claim within the scope of this court's jurisdiction, a plaintiff is required to demonstrate a right to compensation based on a contract, a money-mandating statute, or the Takings Clause of the United States Constitution.  Fisher v. United States, 402 F.3d 1167, 1173 (2005).  Counts I and II of the complaint satisfy this prescription.  In Count I, plaintiff seeks monetary damages based on a contract provision requiring the United States to indemnify M&C against claims made in connection with M&C's nuclear work for the United States; in Count II, plaintiff identifies a statute, the Price-Anderson Act, 42 U.S.C. § 2014, as a source of indemnification authority for its injuries.  Since these are the types of controversies this court is authorized to decide, there is no want of subject matter jurisdiction here.

---

[2]  Plaintiff's complaint identifies a number of government contracts that contain indemnity provisions provided to M&C by the government.  These provisions were not the same for all of M&C's contracts with the government.  The language of the indemnity provision to which we refer in this order reflects the text of the provision upon which the parties have principally focused their arguments.

[3]  At the time defendant filed its motion to dismiss, the Toxic Tort Actions had not been fully resolved, thus prompting defendant to include as part of its motion to dismiss for lack of jurisdiction plaintiff's claim for indemnification of the extant costs incurred in the defense of those actions.  Although the Toxic Tort Actions have since been settled, defendant argues that the subsequent finalization of plaintiff's costs and an amendment of the complaint to reflect this fact cannot cure the lack of jurisdiction over plaintiff's claim for the reimbursement of these costs at the time the complaint was filed.  Because we find the lack of jurisdiction defense to be without merit in its entirety, we need not further address the contention that a lack of jurisdiction that exists at the outset of a lawsuit cannot be remedied by later amendment.

The fact that plaintiff may not ultimately succeed on the merits—an outcome that could occur, for example, if the court were to later agree with defendant's contention that the predicate for the government's duty to indemnify is a final resolution of a formally filed claim against the contractor—does not mean that the court is without jurisdiction from the start.  It would mean, instead, that plaintiff had failed to state a claim upon which relief could be granted.  <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946) ("If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction."); <u>Greenlee County, Arizona v. United States</u>, 487 F.3d 871, 875–76 (Fed. Cir. 2007).

Defendant argues in the alternative that even if the court has jurisdiction over this matter, it should nevertheless dismiss plaintiff's toxic tort claim as well as Counts II and III for failure to state a claim upon which relief can be granted.  We address theses issues in turn below.

With respect to plaintiff's toxic tort claim, defendant maintains that the complaint fails to state a claim for relief because it contains (i) no specific factual allegations linking the harm allegedly suffered by the toxic tort claimants to radioactive materials of the sort used by M&C in the performance of its government contracts, and (ii) no specific factual allegations linking the performance of M&C's contracts to the radioactive materials found at the Shpack Landfill.

Although defendant is correct that the complaint lacks the particular factual allegations defendant has identified here, it is not correct that these missing allegations render the complaint deficient as a matter of law.  The complaint recites that "[t]he parties in the . . . Toxic Tort Actions have alleged that radioactive material from . . . [M&C's] former facility in Attleboro, Massachusetts . . . is present at Shpack," and it further states that "[i]n a report dated June 26, 1979, the [NRC] concluded that contract work performed by M&C for the Government was a probable source of uranium materials found at Shpack."  (Compl. at ¶¶ 16, 50.)  These allegations, the factual correctness of which we assume for purposes of deciding defendant's motion to dismiss, <u>Hemi Group, LLC v. City of New York</u>, ____ U.S. ____, 130 S. Ct. 983, 986–87 (2010), are enough to tie the Toxic Tort Actions to the work performed under the government contracts on which plaintiff relies, and thus ultimately to the indemnity provisions of those contracts.  That is to say, one may reasonably infer from these allegations that the injuries suffered by the toxic tort claimants are in fact traceable to radioactive materials found at the Shpack Landfill that originated from source materials utilized by M&C during its decades-long performance of government contracts.  Thus, the allegations are sufficient to "state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the [conduct] alleged."). This is as far as plaintiff needs to go at this point to survive a motion to dismiss under RCFC 12(b)(6).

Defendant next contends that we should dismiss Count III ("Reimbursement") and Count IV ("Implied Warranty of Specifications . . .") because in each instance plaintiff seeks recovery based on an interpretation of specific contractual terms while failing to identify those terms in its complaint. This omission, asserts defendant, renders the complaint deficient under RCFC 9 ("Pleading Special Matters") which directs a party pleading a claim founded on a contract (the case here) to "identify the substantive provisions of the contract . . . on which the party relies" or "annex to the complaint a copy of the contract . . . indicating the relevant provisions." RCFC 9(k). Defendant argues that plaintiff has not satisfied this pleading requirement and as a consequence, Counts III and IV should be dismissed under RCFC 12(b)(6).

Dismissal, however, is not an appropriate response to the shortcomings that defendant has alleged; amendment of the complaint is. As the Supreme Court has admonished, "'[t] he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' . . . [Consequently,] [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 181–82 (1962) (internal citation omitted). Plaintiff must therefore be allowed to amend its complaint.

III.

For the reasons set forth above, defendant's motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted is DENIED. On or before July 13, 2011, plaintiff shall file an amended complaint identifying the contract terms and provisions that form the bases for the relief requested in Counts III and IV of the complaint.

IT IS SO ORDERED.

s/John P. Wiese
John P. Wiese
Judge